IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

*

GLENN H. MARTIN,                          *

    Plaintiff,                        *

       v.                         *  CIVIL NO.: WDQ-12-2134

HARTFORD LIFE AND ACCIDENT               *
INSURANCE COMPANY,

    Defendant.                        *

*

*    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM OPINION

Glenn Martin sued Hartford Life and Accident Insurance
Company ("Hartford") under § 1132(a)(1)(B)[1] of the Employee
Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§
1001 et seq., for denying him disability benefits under his
former employer's ERISA plan. ECF No. 1 at 2-6. Both parties
have moved for summary judgment. ECF Nos. 21, 22. No hearing
is necessary. Local Rule 105.6 (D. Md. 2011). For the
following reasons, Hartford's motion for summary judgment will
be GRANTED, and Martin's motion for summary judgment will be
DENIED.

---

[1] This section permits a "participant or beneficiary . . . to
recover benefits due to him under the terms of his plan, to
enforce his rights under the terms of the plan, or to clarify
his rights to future benefits under the terms of the plan." 29
U.S.C. § 1132(a)(1)(B).

I. Background[2]

Martin is a former graphic designer whose job at Computer
Services Corporation ("CSC") required him to work on a computer
most of the day, read extensively, walk short distances, lift up
to 20 pounds, and commute by car 18 miles to and from work. *See*
ECF No. 22-2 at 7; HLI656-57, 882, 912-14.[3]  Martin participated
in CSC's Group Benefit Plan ("the Plan"), insured by Hartford.
ECF No. 21-1 at 1.  The Plan considers a beneficiary "disabled"
when "you are prevented from performing one or more of the
Essential Duties of Your Occupation."[4]  HLI19.

In January 2009, Martin became ill with an upper
respiratory infection and began experiencing vertigo, dizziness,
loss of balance, and tremors of the hands and head, which made
him unable to drive or use the computer for long periods of
time.  HLI92, 587, 677; ECF No. 22-2 at 8.  Martin stopped
working in April 2009.  HLI461.  His symptoms persisted for

---

[2] The facts are taken from the parties' motions for summary
judgment, ECF Nos. 21, 22, the parties' replies to the motions,
ECF Nos. 23, 24, and the administrative record filed under seal,
ECF No. 20.  On cross motions for summary judgment, "each motion
[is] considered individually, and the facts relevant to each
[are] viewed in the light most favorable to the non-movant."
*Mellen v. Bunting,* 327 F.3d 355, 363 (4th Cir.2003).

[3] "HLI" citations refer to pages in the administrative record,
filed under seal.  ECF No. 20

[4] The Plan defines Your Occupation as "your occupation as it is
recognized in the general workplace . . . [not] the specific job
you are performing for a specific employer or at a specific
location."  HLI22.

several months, and Hartford awarded him short-term disability benefits under the Plan. *See* ECF No. 22-2 at 8-9.

Martin saw several medical professionals for treatment of his illness. A nurse practitioner, Nurse Jacobs, diagnosed Meniere's disease.[5] HLI281. Following this diagnosis, Martin went to physical therapy for about three weeks before deciding to continue therapy on his own at home. HLI185. He also saw several specialists, including a neurologist--Dr. Mody, HLI178-79, an otolaryngologist--Dr. Eisenmann, HLI677-78, a pain specialist--Dr. Kahan, HLI226-28, and a hearing specialist--Dr. Epple, HLI754. It is unclear whether any of these doctors independently verified Martin's Meniere's diagnosis, or merely adopted Nurse Jacobs's opinion,[6] and Dr. Eisenmann stated that Martin's "history [was] not strongly suggestive of Meniere's disease."[7] HLI677. Dr. Kahan diagnosed Martin with diffuse arthralgia--joint pain, HLI227, and Dr. Mody diagnosed benign

---

[5] Meniere's "can cause severe dizziness, a roaring sound in the ears called tinnitus, hearing loss that comes and goes and the feeling of ear pressure or pain." ECF No. 22-2 at 8 n.2.

[6] For example, Dr. Kahan noted that his "impression" of Martin was that he had Meniere's disease, HLI227, but his diagnostic notes focus primarily on Martin's complaints of joint pain, HLI226-28. Dr. Epple noted that Martin's "case history" and test results "strongly suggest the possibility of Meniere's disease in his left ear." HLI754.

[7] Dr. Eisenmann opined that Martin's symptoms might be related to vestibular migraines rather than Meniere's. *See* HLI677.

essential tremors and titubation, HLI108. Dr. Mody noted in one
of his reports that Martin "is disabled far out of proportion to
his symptoms and physical examination and underlying psychiatric
illness including anxiety and depression is considered the
differential diagnosis." HLI109. Mody also apparently gave
Martin a note stating that he might not be able to pass a
sobriety test. HLI83.

To determine Martin's entitlement to long-term disability
benefits, Hartford contacted Nurse Jacobs for an opinion as to
whether Martin could return to work. HLI880. In August 2009,
she informed Hartford that Martin was "currently unable to
work," because he could only "use a computer for 15-30 [minutes]
and read up to 20 [minutes] without triggering an episode."
HLI882. She noted that "[h]is episodes also increase in rainy
weather" and he was "only able to drive 2-3 miles." *Id.* In
October 2009, based on this letter and Martin's self-reported
symptoms, Hartford awarded him long-term benefits and premium
waiver benefits (together "disability benefits") under the Plan.
*See* ECF No. 22-2 at 8-9. In September 2010, Martin was also
awarded Social Security disability benefits, following
examinations by two physicians working for the Social Security
Administration. *See* HLI87-103, 219.

In February 2010, Hartford learned that Martin's self-
reported daily activities included watching television, checking

his email, working in his yard, and playing guitar. HLI960.
Because Hartford believed that these activities conflicted with
Martin's reported limitations--his inability to look at a
computer screen and hand tremors--Hartford investigated his
claim for disability benefits. *See* ECF No. 22-2 at 9. Hartford
sent an investigator to video record Martin's activities outside
his home. *Id.* On two days in February 2010, the investigator
did not record any activity, but on two days in March 2010, the
investigator recorded Martin working on his cars and seeding his
front lawn. *See id.* In the surveillance videos, Martin is seen
bending, reaching, squatting, rising, and walking normally
without signs of dizziness or imbalance for several minutes at
different times of day. *Id.* at 9-10; HLI955, 957.

Hartford believed the video footage also conflicted with
Martin's self-reported symptoms and sent an investigator to
interview Martin at home. HLI577. Martin told the interviewer
that the recorded activity was his "normal/average level of
functionality." HLI578. He also told the interviewer that the
recorded days were "good days," and he also has bad days.[8] *See*
HLI578-79. The interviewer did not observe Martin's balance
problems, dizziness, or reports or suggestions of severe pain,

_____

[8] Martin also states in an affidavit that he rested for several
hours on the days he was recorded, and that the lawn spreader
acted as a cane and "assists [him] with balance problems." *See*
HLI436.

although he reported that at times Martin had difficulty concentrating.[9]  *See* HLI578-82.

After the interview, Hartford hired Dr. Lipkin, an otolaryngologist and independent consultant, to review Martin's medical records and the surveillance videos. *See* HLI660-61.  In October 2010, Dr. Lipkin spoke to Dr. Eisenmann[10] who reported that "in general, he does not regard patients with conditions like this as being permanently and continuously impaired – symptoms may be intermittent, and between episodes they may be able to function normally."[11]  HLI658.  After his review, Dr. Lipkin concluded that Martin could handle "a full-time light physical demand level up to 40 hours per week."  HLI661.  This demand level is consistent with that required by Martin's job as a graphic designer, classified as a "sedentary occupation" with light physical demands.  HLI996.  In November 2010, following Dr. Lipkin's review, Hartford terminated Martin's disability benefits.  ECF No. 22-2 at 13.

---

[9] Martin states that rainy weather tends to cause severe vertigo. *See, e.g.*, HLI882, 885.  The investigator noted that the interview took place on a rainy day, and Martin did not "complain[] of a Meniere's episode during the interview or stat[e] that he felt sick."  HLI590.

[10] Dr. Lipkin also spoke to Nurse Jacobs, but she merely referred him to Dr. Eisenmann because she had not seen Martin in several months.  HLI660.

[11] *See also* HLI326 ("Episodes of dizziness appear to be [sporadic] and last 1-2 minutes and are not continuous.").

6

Martin appealed Hartford's decision through counsel, and Hartford hired specialists in otolaryngology (Dr. Foyt) and internal medicine (Dr. Mazzella), to review his file. *See* ECF No. 22-2 at 15-18; HLI372-79, 394-402. In September 2011, Dr. Foyt spoke to Nurse Jacobs who said she believed Martin was handicapped, because he "cannot drive greater than 10 minutes or use a computer greater than 10 minutes."[12] HLI377. Despite numerous attempts, the reviewing physicians were unable to reach Martin's treating physicians for consultation. *See, e.g.*, HLI399-400. Drs. Foyt and Mazzella also concluded that Martin was not disabled. HLI377, 400. Hartford upheld its termination of Martin's benefits. ECF No. 22-2 at 18.

On July 19, 2012, Martin sued Hartford under § 1132(a)(1)(B) of ERISA, alleging that: (1) Hartford breached its contract with him under the Plan by abusing its discretion in terminating his disability benefits, ECF No. 1 at ¶¶20-32; and alternatively (2) Hartford breached its duty to Martin under 29 USC § 1132(a)(3), ECF No. 1 at ¶¶34-36. Martin sought: (1) reinstatement of his disability benefits; (2) payment, including interest, of past-due benefits in the amount of $30,510.20; (3) continued payment of his disability benefits "until such time as he no longer qualifies;" and (4) attorney's fees and costs. ECF

---

[12] To support her diagnosis, Nurse Jacobs relied upon a dizziness assessment performed in 2009. HLI277.

No. 1 at 10. Without Martin's opposition, the Court dismissed the second count of his complaint. ECF Nos. 7, 8.

On November 15, 2012, Martin moved for summary judgment on count 1 of the complaint. ECF No. 21. On December 6, 2012, Hartford moved for summary judgment. ECF No. 22. Both parties replied. ECF Nos. 23, 24.

II. Analysis

A. Standard of Review

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[13] In considering the motion, the judge's function is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to ... the nonmovant and draw all reasonable

---

[13] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,' and restored the word "'shall' ... to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

inferences in his favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir.2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir.2003) (citation and internal quotation marks omitted).

When cross motions for summary judgment are filed, "each motion must be considered individually, and the facts relevant to each must be reviewed in the light most favorable to the nonmovant." *Mellen*, 327 F.3d at 363 (*citing Rossignol v. Voohaar*, 316 F.3d 516, 523 (4th Cir. 2003)).

    B. Martin's Motion for Summary Judgment

        1. Abuse of Discretion Standard

When, as here, an ERISA benefit plan vests the plan administrator with discretionary authority to make eligibility determinations, [14] the court reviews the administrator's decision for abuse of discretion. *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 629-30 (4th Cir. 2010). The review is "limited to the body of evidence before the administrator at the time it rejected [the] claim." *Donnell v. Metro. Life Ins. Co.*, 165

---

[14] The Plan provides that Hartford has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." HLI19.

9

Fed. Appx. 288, 294 (4th Cir.2006). The plaintiff has the burden of proving an abuse of discretion.[15]

Under the abuse of discretion standard, the Court "must not disturb the [administrator's] decision if it is reasonable, even if the court itself would have reached a different conclusion." *Fortier v. Principal Life Ins. Co.,* 666 F.3d 231, 235 (4th Cir. 2012). "The administrator's decision is reasonable if it is the result of a deliberate, principled reasoning process and it is supported by substantial evidence[.]" *DuPerry v. Life Ins. Co. of N. Am.,* 632 F.3d 860, 869 (4th Cir. 2011) (internal quotation marks omitted). Substantial evidence is that "which a reasoning mind would accept as sufficient to support a particular conclusion." *Id.* It "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."[16] "[I]f there is evidence to justify a refusal to direct a verdict were the case before the jury, then there is substantial evidence."[17]

---

[15] *Saah v. Contel Corp.,* 780 F. Supp. 311, 315 (D. Md. 1991), *aff'd,* 978 F.2d 1256 (table), 1991 WL 310225 (4th Cir. 1992); *accord Atwater v. Nortel Networks, Inc.,* 388 F. Supp. 2d 610, 617 (M.D.N.C. 2005); *Case v. Continental Cas. Co.,* 289 F. Supp. 2d 732, 737 (E.D. Va. 2003).

[16] *LeFebre v. Westinghouse Elec. Corp.,* 747 F.2d 197, 208 (4th Cir. 1984), *overruled by implication on other grounds by Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 123 S. Ct. 1965, 155 L.Ed.2d 1034 (2003).

[17] *Bickel v. Sunbelt Rentals, Inc.,* No. WMN-09-2735, 2010 WL 3938348, at *3 (D. Md. Oct. 6, 2010) (internal quotation marks

The administrator's decision "must be based on the whole record [,] and the [administrator] cannot pick and choose evidence that supports its decision while ignoring other relevant evidence in the record." *Mills v. Union Sec. Ins. Co.*, 2011 WL 2036698, at *11 (E.D.N.C. May 24, 2011) (*citing Myers v. Hercules, Inc.*, 253 F.3d 761, 768 (4th Cir. 2001)).

The Fourth Circuit has identified eight nonexclusive factors that the Court may consider in reviewing the reasonableness of an administrator's decision:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.[18]

*DuPerry*, 632 F.3d at 869 (internal citation and quotation marks omitted).

---

omitted) (*quoting Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

[18] Martin asserts that "Hartford's decision to terminate Mr. Martin's benefits was not the result of a deliberate, principled reasoning process and was not based on substantial evidence." *See* ECF No. 21-1 at 6. He does not refer to any of the other *DuPerry* factors. *See id.* at 6-24.

Martin asserts that Hartford's initial decision to terminate his disability benefits, and its decision to uphold the termination on appeal, were not supported by substantial evidence and were an abuse of discretion. ECF No. 21-1 at 6, 16. He also contends that Hartford incorrectly concluded that "Martin does not have a condition that prevents him from doing *any* work." *Id.* at 24.

2. Initial Termination of Benefits

Martin argues that Hartford improperly terminated his benefits because: (1) the evidence Hartford said it relied on is not substantial evidence that Martin is not disabled; (2) "Hartford did not give proper weight to the opinions of Mr. Martin's medical care providers, particularly Ms. Jacobs and Dr. Mody;" (3) Hartford improperly relied on the opinion reached in Dr. Lipkin's "independent medical review;" and (4) CSC's occupational requirements for a graphic designer did not support Hartford's conclusion that Martin could work. ECF No. 21-1 at 6-15. Essentially, Martin discounts the evidence relied upon by Hartford, because of what he believes is "overwhelming" medical evidence of disability which supports his claim. *Id.* at 14. Hartford contends that its decision was amply supported by the record. *See, e.g.*, ECF No. 22-2 at 25.

In evaluating conflicting evidence of disability, Plan administrators "are not required to accord any special deference

to the opinions of treating physicians over those of non-treating consultants." *See Hensley v. Int'l Bus. Machs. Corp.,* 123 Fed. App'x. 534, 539 (4th Cir. 2004). "[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Word,* 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). However, when a plan administrator denies benefits in the face of conflicting medical opinions, the conflicting evidence on which the administrator relies must be substantial. *Stup v. Unum Life Ins. Co.,* 390 F.3d 301, 308 (4th Cir. 2004) *abrogated on other grounds by Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105 (2008); *Elliott v. Sara Lee Corp.,* 190 F.3d 601, 606 (4th Cir. 1999). The decision "must be based on the whole record and [the plan administrator] cannot pick and choose evidence that supports its decision while ignoring other relevant evidence" before it. *Mills,* 2011 WL 2036698, at *11.

Viewing the facts in the light most favorable to Martin, the record contains conflicting evidence about whether Martin is disabled. The strongest evidence supporting Martin is Nurse Jacobs's opinion that Martin has Meniere's disease, cannot drive or use a computer for long periods of time, and should,

13

accordingly, be considered disabled and unable to work.[19]

However, Dr. Eisenmann, who treated Martin, and Dr. Lipkin, who

reviewed Martin's records, disagreed with Nurse Jacobs's

diagnosis and her opinion as to Martin's limitations. *See*

HLI658-59, 677, 995. As Board-certified physicians in

otolaryngology, Drs. Lipkin and Eisenmann have expertise in

medical diagnosis of ear disorders, and Hartford reasonably

credited their opinions over Nurse Jacobs's diagnosis.[20]  *See*

---

[19] Although Martin frequently cites Dr. Mody's opinion in support
of his disability claim, *see, e.g.*, ECF No. 21-1 at 18, Dr.
Mody's diagnostic notes provide little support.  Dr. Mody
appears to have signed a note stating that Martin might not be
able to pass a sobriety test, HLI83, and he states that Martin's
"[i]ntermittent vertigo is probably from Meniere's disease."
HLI109.  However, his notes also state: (1) Martin's "vertigo
has become intermittent and less disabling;" (2) "There is no
nystagmus;" (3) "The patient's gait is normal;" (4) "Patient is
disabled far out of proportion to his symptoms;" and (5)
"Patient has been reassured about benign nature of the essential
tremors and titubation."  *Id.* at 108-09.  Nystagmus "describes
fast, uncontrollable movements of the eyes caused by abnormal
function in the areas of the brain that control eye movements."
ECF No. 22-2 at 8 n.3.  Essential tremors describe "a
progressive neurologic condition that causes involuntary
rhythmic trembling" of the extremities, HLI63, and titubation
describes "[a] tremor or shaking of the head," STEDMAN'S MEDICAL
DICTIONARY (27th ed. 2000).  Thus, Mody's evidence is internally
inconsistent.

[20] Nurse Jacobs is a Nurse Practitioner who works in an
otolaryngology practice.  HLI59.  Although Nurse practitioners
often serve as primary care physicians, they have less medical
training than Board-certified physicians.  *See, e.g.*, Robyn E.
Marsh, *The Health Care Industry and Its Medical Care Providers:
Relationship of Trust or Antitrust?*, 8 DePaul Bus. & Com. L.J.
251, 256-58 (2010).

*Black & Decker*, 538 U.S. at 834 ("[T]he assumption that the opinions of a treating physician warrant greater credit than the opinions of plan consultants may make scant sense when, for example . . . a specialist engaged by the plan has expertise the treating physician lacks."). Moreover, Dr. Eisenmann treated Martin before concluding that people with Martin's symptoms are not generally "permanently and continuously impaired." HLI677, 995. Thus, Hartford relied on the opinion of one of Martin's treating physicians and Hartford's consultant, in resolving the conflicting evidence in Martin's records.

Other evidence in the record also supports Hartford's initial conclusion that Martin is not disabled. The surveillance video shows Martin engaging in light yard work for several minutes on two days without signs of dizziness or imbalance.[21] ECF No. 22-2 at 9-10; HLI955, 957. The interview

---

[21] Martin argues that his activity in the video is no more than "light work" and non-strenuous physical activity. ECF No. 21-1 at 8. He argues that "the video fails to show whether Mr. Martin suffers from [disabling] symptoms," and cites, *Linck v. Arrow Electronics, Inc.*, CIV.A. AW-07-3078, 2009 WL 2408411, at *5 (D. Md. Aug. 3, 2009), for the proposition that reliance on surveillance videos is an abuse of discretion when the videos do not reveal if the claimant "suffered any pain or dizziness while performing the activities" or "definitively prove" that the claimant could work full time. *Id.* at 9. However, the plaintiff in *Linck* provided other documentation of his "typical daily activity level," which showed that Linck was frequently "capable of little to no activity." 2009 WL 2408411, at *2, *5. On the other hand, Martin's reports of his daily activities show that he is typically capable of a wide range of "light" activities. HLI586-87. In addition, Hartford did not rely only

conducted by Hartford's investigator did not corroborate

Martin's claims that he suffers from debilitating vertigo and

tremors.[22]   *See* HLI578-82.   Martin's self-reported daily

activities also do not support his disability claims.[23]   Martin's

treating physician, Dr. Mody, states that his tremors and

titubation are "benign," and his claimed level of disability is

not consistent with his symptoms.   HLI181.   Finally, Martin made

several reports that his symptoms are improving.[24]   Thus,

---

on the surveillance video in making its determination, *see,*
*e.g.*, HLI993-97, whereas it was the primary evidence the
defendant relied on in *Linck* to deny benefits.   *See* 2408411, at
\*2; *see also Briggs v. Marriott Int'l, Inc.*, 368 F. Supp. 2d
461, 471 (D. Md. 2005) *aff'd,* 205 F. App'x 183 (4th Cir. 2006)
("Although not dispositive, when coupled with the testimony of
the medical physicians, [video surveillance] evidence justifies
[defendant's] conclusion that [plaintiff] was capable of
performing his occupation.").

[22] Martin argues that several of the investigator's observations
corroborate Martin's claims, such as seeing Martin "sway side to
side slightly" and drop a guitar pick.   ECF No. 21-1 at 10.
However, the investigator comments several times that Martin
could move around with apparent ease and without the use of
assistive devices, did not complain of pain or fatigue, and
could read and make changes to a document.   HLI579-82.   Viewed
as a whole, the interview notes do not support Martin's claims
of disability.   *See id.; see also Bickel*, 2010 WL 3938348, at \*3
(administrator must make decision based on whole record).

[23] These include his ability to play the guitar, his use of the
computer for an hour each day, his weekly 18 mile drive to his
parents' house, his ability to do light yard work, including use
of a leaf blower and gardening, his ability to leave the house
to perform errands and attend occasional concerts, and his
ability to watch television.   HLI586-87.

[24] *See, e.g.*, HLI74 (Nurse Jacobs's notes from April 12, 2011)
("[D]izziness [o]nset was 2 Year(s) ago.   Severity is mild-

16

although the record contains conflicting evidence about Martin's conditions and symptoms, Hartford's "decision making process" appears "reasoned and principled," *DuPerry,* 632 F.3d at 869, and its termination decision is supported by substantial evidence. Accordingly, Martin has failed to establish a genuine dispute that Hartford's decision to terminate his benefits was an abuse of discretion. *See* Fed. R. Civ. P. 56(a).

### 3. Rejection of Appeal

Martin contends Hartford also abused its discretion in upholding its initial decision to terminate his benefits upon his appeal, because: (1) Martin was approved for Social Security disability benefits; (2) Hartford inappropriately relied on the opinions of Drs. Eisenmann, Foyt and Mazzella; and (3) Hartford ignored evidence of Martin's other medical ailments and Dr. Mody's note that Martin may not be able to pass a sobriety test. *See* ECF No. 21-1 at 16-24. Hartford asserts that the standard governing the award of Social Security disability benefits differs from those of the Plan. *Id.* at 19. Hartford also reiterates that substantial evidence supported its decision, including independent reviews by two additional physicians, and asserts that the mere presence of some ailments in a beneficiary

---

moderate. The problem is improving. . . . "Vertigo. Frequency: 1x per week. The severity is described as moderate. . . . It is improved by medication.").

does not automatically compel a finding of disability. *See* ECF No. 22-2 at 16-18, 25.

Unlike the Social Security program, ERISA does not "require employers to establish employee benefit plans" or require that employers provide a particular set of benefits. *Black & Decker*, 538 U.S. at 833. "Accordingly, what qualifies as a disability for social security disability purposes does not necessarily qualify as a disability for purposes of an ERISA benefit plan-the benefits provided depend entirely on the language in the plan." *Smith v. Cont'l Cas. Co.*, 369 F.3d 412, 420 (4th Cir. 2004). When considering whether a beneficiary receiving Social Security disability benefits is also entitled to benefits under the Plan, "there is no obligation to weigh the agency's disability determination more favorably than other evidence." *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 275 (4th Cir. 2002) (internal quotation marks and citations omitted). Thus, "the mere grant of benefits by an agency that applies a different standard or a different definition of disability does not render [denial] of benefits under the Plan unreasonable." *Simmons v. Prudential Ins. Co. of Am.*, 564 F. Supp. 2d 515, 524 (E.D.N.C. 2008).

There is no indication Hartford did not consider the grant of Social Security benefits to Martin, or the opinions of the physicians who examined Martin to determine his eligibility for

Social Security, in upholding its termination of Martin's benefits. *See, e.g.*, HLI973-76. Hartford simply concluded that, in addition to the evidence that led to its initial termination of Martin's benefits, other evidence supported its decision to deny Martin's appeal.[25] *Id.* This additional evidence included the opinions of Drs. Foyt and Mazzella, Hartford's hired consultants, that Martin was not disabled.[26]

_____

[25] Martin argues that Hartford should have entirely discounted Dr. Eisenmann's views for purposes of the appeal, because Dr. Eisenmann told Hartford on September 7, 2010, that he does "not do disability evaluations" and Dr. Eisenmann did not view the surveillance video. *See* ECF No. 21-1 at 15. However, Martin acknowledges that the surveillance video does not provide evidence of his disability. *Id.* at 9. Also, Dr. Eisenmann's failure to conduct a disability evaluation does not suggest Hartford should have entirely disregarded his prior analyses of Martin's symptoms, especially since Martin faults Hartford for relying on the opinions of Drs. Lipkin, Foyt, and Mazzella who do formal disability evaluations. *See, e.g.*, *id.* at 14.

[26] Martin argues that Drs. Foyt's and Mazzella's opinions did not reflect adequate consultation with, and consideration of, the opinions of his treating health care providers, primarily Nurse Jacobs. *See* ECF No. 21-1 at 21-24. However, the doctors attempted to contact Martin's treating physicians for consultation and were largely unsuccessful, *see, e.g.*, HLI399, and Dr. Foyt spoke to Nurse Jacobs, HLI388. Dr. Foyt notes that he disagrees with Nurse Jacobs's opinions, especially since she could not substantiate her diagnosis of Meniere's with more "concrete data" than the dizziness assessment. *See* HLI388-89. Considering that both doctors' assessments refer to the opinions and notes of Martin's treating health care providers in coming to their conclusions, Hartford did not abuse its discretion in relying on its doctors' opinions. *See Frankton v. Metro. Life Ins. Co.*, 432 F. App'x 210, 215-16 (4th Cir. 2011) (upholding determination that Plan administrator properly denied benefits, in part because "[u]pon reviewing the medical reports, the district court stated that the reports of [the medical

Their opinions were reached after reviewing Martin's entire medical history--including the many reports from his other treating health care providers that diagnose him with various other medical conditions, *id.*--and Hartford's reliance on them was not an abuse of discretion.[27]

Although the evidence about Martin's disability was conflicting, Hartford was entitled to deny disability benefits because its conclusion was supported by substantial evidence, and it did not ignore relevant, contrary evidence. *See Stewart*, 2011 WL 3020890, at *9; *Booth*, 201 F.3d at 345 ("'It is not an abuse of discretion for a plan fiduciary to deny ... benefits where conflicting medical reports were presented.'") (*quoting Elliott,* 190 F.3d at 606); *Frankton*, 432 F. App'x at 215. Martin has failed to show that Hartford abused its discretion in denying his appeal. *See* Fed. R. Civ. P. 56(a).

4. Any job

Martin argues that Hartford erred in concluding that Martin's condition did not prevent him from working, because of

---

consultants] are 'replete with references to and criticism of [the treating physician's] records and diagnoses.'").

[27] *See Spry v. Eaton Corp. Long Term Disability Plan*, 326 F. App'x 674, 681 (4th Cir. 2009) (Administrator did not act unreasonably "in not considering whether [plaintiff's] various medical conditions were cumulatively disabling," because none of plaintiff's treating physicians "ever listed" any of those conditions "as being disabling").

the "overwhelming medical evidence that Mr. Martin is disabled
from doing *any* job, not just his previous job as a graphic
designer." ECF No. 21-1. Because Hartford did not abuse its
discretion in finding that Martin could work as a graphic
designer, Martin has not established that Hartford erroneously
concluded that he could do some work.

C. Hartford's Motion for Summary Judgment

Hartford contends that its initial decision to terminate
Martin's benefits was amply supported by substantial evidence,
*see, e.g.*, ECF No. 22-2 at 25, as was its decision to uphold its
termination decision on appeal, *see* ECF No. 22-2 at 16-18, 25.
Thus, Hartford asserts that its decisions were not an abuse of
discretion. *Id.* at 27.

A district court's review of the discretionary decision of
a Plan Administrator to terminate disability benefits is
"significantly limited." *See Ellicot*, 190 F.3d at 605. The
court may only overturn the Administrator's decision if the
Administrator abused its discretion. *See Williams*, 609 F.3d at
629-30. A Plan Administrator does not abuse its discretion if
its decision is reasonable; a reasonable decision is supported
by substantial evidence and results from a "deliberate,
principled reasoning" decision-making process. *See id.* at 630
(internal quotation marks and citations omitted). Accordingly,
a Plan Administrator is entitled to summary judgment if its

decision to terminate a beneficiary's disability benefits is
reasonable, even if the court would have reached a different
conclusion. *See, e.g.*, *Donnell*, 165 Fed. App'x at 290-21, 297;
*DiCamillo v. Liberty Life Assur. Co.*, 287 F. Supp. 2d 616, 622-
25, 628 (D. Md. 2003); *see also Ellicot*, 190 F.3d at 605;
*Fortier,* 666 F.3d at 235.

As discussed above in sections I.B.1. and I.B.2., some
evidence in the record supported Martin's claims of disability.
However, viewing the administrative record in the light most
favorable to Martin, substantial evidence supported Hartford's
conclusion that Martin was not disabled. A Plan Administrator
does not abuse its discretion in denying benefits merely because
the record contains conflicting evidence of disability, as long
as the evidence supporting the termination decision is
substantial and based on the whole record. *See Stup,* 390 F.3d
at 308; *Mills*, 2011 WL 2036698, at *11.

Here, Hartford relied on the opinions of three independent
consultants, Drs. Foyt, Mazzella, and Lipkin, diagnostic notes
and opinions from two of Martin's treating physicians, Drs.
Eisenmann and Foyt, surveillance footage, notes from an in-
person interview, and Martin's self-reported improving symptoms
and daily activities to conclude that Martin was not disabled.
*See, e.g.*, HLI337-38, 992-97; *see also Booth*, 201 F.3d at 344
(concluding that administrator's decision making process was

principled and reasoned, in part because it "sought numerous reviews by independent doctors" and considered conflicting evidence). It also considered evidence supporting Martin's claim, such as Nurse Jacobs's diagnosis and opinions and his award of Social Security benefits, in making its decisions. *See, e.g.*, HLI337-38; *see also Donnell*, 165 Fed. App'x at 294-95 (administrator's decision making process was deliberate and principled because it involved "a genuine and thorough consideration of all the evidence before it"); *Booth*, 201 F.3d at 344. Thus, a reasonable jury could not find that Hartford's decision was not based on substantial evidence or did not result from a deliberate and principled reasoning process, and Hartford is entitled to summary judgment. *See Donnell*, 165 Fed. App'x at 290-21, 297; *Anderson*, 477 U.S. at 248.

III. Conclusion

For the reasons stated above, the defendant's motion for summary judgment will be GRANTED, and the plaintiff's motion for summary judgment will be DENIED.

9/18/13
Date

William D. Quarles, Jr.
United States District Judge

23